## WILLIAMSON v. CROSSETT.

### Opinion delivered May 9, 1896.

LANDLORD AND TENANT — SURRENDER OF LEASE — ACCEPTANCE.— Where, a year before the expiration of a lease of a farm for a term of years, the lessees wrote to the lessors that they would be unable to work the farm, and advised the lessors to rent out the land to some one else, and the lessors did not reply to the letter, but soon afterwards took charge of the farm, and induced a sub-lessee to take up a rent note executed to the lessees and execute a new note to them, and rented part of the land to another, this consti- tuted an offer on the part of the lessees to surrender the farm, and an acceptance thereof by the lessors.

Appeal from Woodruff Circuit Court.

GRANT GREEN, JR., Judge.

#### STATEMENT BY THE COURT.

In the year 1888, the appellants, Benj. H. and Louis S. Williamson, leased a farm in Mississippi to the appel- lees, W. A. Crossett and others, who were engaged in farming and mercantile business, under the firm name of W. A. Crossett & Co. The lease was for a term of five years, commencing with the year 1889, and the consid- eration therefor was an annual rental of $650, to be paid by appellees in November of each year during the exist- ence of the lease. W. S. Martin, one of the appellees, who was a member of the firm of W. A. Crossett & Co. at the time the lease was executed, retired from the firm in 1890, and moved to this state.

The rents for the first four years were paid, but in 1893 the firm of W. A. Crossett & Co. failed.    Shortly afterwards, W. A. Crossett, the senior member of the firm, sent the following letter to B. H. Williamson:

"Hernando, Miss., Jan. 29th., 1893.
Mr. B. H. Williamson,

Dear Sir:  I write to inform you that it will be impossible for us to furnish hands and teams to work your place, which we have a lease on for this year.    We have rented to Mr. W. B. Counts that part of the lands on the hills for four bales of cotton, and to a negro by the name of John Floy, some land in the valley for four bales of cotton.    He is a good negro, and has nearly corn enough to feed three mules; and if you would go there at once, and see the parties, maybe you could get them to stay.    We have sold out our entire effects to Fulmer & Thornton, to pay our indebtedness; and it would be folly in you to try to make us keep it, for it would have to lay out, and we could not pay the rent next fall.    And, as it is early, you can rent it out to some one else, and thereby lose nothing.    Sorry we are in this condition, but can't help it.    Yours truly,

W. A. Crossett & Co.

Per W. A. C."

Williamson did not reply to this letter, but, soon after receiving it, he went down, and took charge of the place.

W. R. Counts, who had rented a portion of the land from Crossett & Co., testified :  "Sometime in February or March, Williamson came to me, and told me that Crossett & Co. had failed, and turned him back the place."    Counts thereupon requested Crossett & Co. to return the note he had executed to them, which was done, and he gave a new note to Williamson for the land rented.    Williamson also rented a portion of the place to one Clapp, and tried to rent out the remainder, but

failed to do so.  He afterwards brought this suit against
Martin and other members of the firm of Crossett &
Co. for the rent of the place for the year 1892, less the
amounts received by him after taking charge of the
place.  Martin filed an answer to the action, and alleged
"that early in the year 1893, the defendant firm of
W. A. Crossett & Co. agreed with the plaintiffs that the
plaintiffs might take and use the land during the year
1893, the consideration being that the defendants should
be released from the payment of the rent for 1893;  *  *
that the plaintiffs under this agreement took charge
of the land, and used and controlled it themselves during
the year 1893."  There was a verdict and judgment for
the defendants.

*Fletcher Roleson,* for appellant.

1.  A tenant cannot abandon a lease, so inform the
landlord, and then be protected, in an action for rent, by
the fact that the landlord entered and rented to another.
18 Atl. 721; 33 Ark. 627; 31 N. Y. S. R. 549.

2.  Even if Crossett's letter and Williamson's con-
duct amount to a contract, then what that contract was
should have been submitted to a jury.  Thompson on
Trials, sec. 1072, and cases cited.

3.  The court *assumed* that Crossett's letter was a
proposition to surrender.  It was rather a renunciation
of the lease, and Williamson was under no obligation to
keep himself in a position to fulfill his part, but could
sue at once, or wait and pursue the course he did.  3
Am. & Eng. Enc. Law, p. 904.

*N. W. Norton,* for appellee.

1.  The instructions are not before this court for
review.  38 Ark. 528; 32 *id.* 222; 39 *id.* 337, etc.; 93
U. S. 46.

2.   The instructions given are unobjectionable. Those refused are not the law of this case.   11 Am. & Eng. Enc. Law, p. 758*h*, and note 2.

3.   The evidence fully supports the judgment.

RIDDICK, J., (after stating the facts).   We need not discuss the instructions given by the learned judge to the jury in this case.   In our opinion, he was justified in holding, as a matter of law, that the letter of W. A. Crossett & Co. to Williamson was an offer to surrender the place for the year 1893.   The appellees, by that letter, stated to Williamson, in substance, that they were unable to furnish hands and teams to work the place which they had rented from him for that year, and advised him that, as it was early in the season, he could rent it out to some one else, and lose nothing.   This could mean nothing else than an offer to surrender the premises to him.   Williamson did not reply to this letter, but soon afterwards took charge of the place, and controlled it for the remainder of the year, without any notice to appellees that he was managing the place on their account, or that he expected them to make good any deficiency in the rents.   This conduct on his part amounted to an acceptance of the offer to surrender made by Crossett & Co.

The evidence conclusively shows that this was the understanding of the parties at the time Williamson took possession.   He himself says that, at the time he received this letter from Crossett & Co., he supposed that they were "totally insolvent."   Upon arriving at the place, he stated to Counts, a tenant who had rented a portion of the place, that Crossett & Co. "had failed, and turned him back the place."   He thus induced Counts to take up the note he had executed to Crossett & Co., and to execute a new note direct to him for the rent of a portion of the land.   This proves that he was not managing the

place for the account of Crossett & Co., and that he considered that they had no further rights in the premises. When the tenant offers to surrender his lease, and the offer is accepted by the landlord, the tenant is not liable for rents accruing afterwards. The facts of this case show that Williamson had no right of action against Crossett & Co. for rents accruing after he took possession. *Talbot* v. *Whipple*, 14 Allen, 180; 2 Wood, Landlord & Tenant (4 Ed.), sec. 494.

We have not overlooked the case of *Meyer* v. *Smith*, 33 Ark. 627, cited by counsel for appellant. It was held in that case that when the tenant abandons the premises, refuses to pay rent, and repudiates the tenancy before the expiration of the lease, the landlord may take possession, and rent for the benefit of whom it may concern, and hold the tenant liable for any portion of the rent unpaid at the end of the term. There was no offer to surrender made in that case by the tenant, and nothing to show that the landlord had accepted a surrender of the lease by the tenant, as there is in this case. It was said in that case that the tenants "refused to respond to all letters concerning the rents, withdrew from the occupancy, and left the house open and unprotected;" that "they never acknowledged any liability for rent after a short occupation to serve their business purpose, but acted in such a manner as to indicate beyond doubt their fixed purpose to repudiate the tenancy." It was held that the landlord, by taking possession under those circumstances, did not, as a matter of law, accept the surrender of the tenant's lease. There are cases in other states opposed to the rule announced in *Meyer* v. *Smith*. As supporting it see *State* v. *McClay*, 1 Har. (Del.) 520; *Breuckmann* v. *Twibill*, 89 Pa. St. 58. Opposed to it, see *Schuisler* v. *Ames*, 16 Ala. 73; *Rice* v. *Dudley*, 65 Ala. 68; *Hackett* v. *Richards*, 13 N. Y. 140.

But the facts here are different. There is no repudiation of the tenancy here. On the contrary, there is an express acknowledgment of the tenancy in the letter of Crossett to Williamson, and an offer to surrender. "I write to inform you," he says, "that it will be impossible for us to furnish hands and teams to work your place which we have a lease on for this year." He admits the contract and the liability, but states that, by reason of business reverses, they will be unable to comply with the contract, and, in effect, offers to surrender the place to appellants. By taking charge of the place soon after receiving this letter, and controlling it for the remainder of the year, without further notice to Crossett & Co., appellants accepted the offer to surrender. Their holding was not for Crossett & Co., but for themselves, and the rights and liabilities of Crossett & Co. as to rents thereafter accruing were at an end. *Hall* v. *Burgess*, 5 B. & C. 332.

The judgment of the circuit court is therefore affirmed.

BATTLE, J., dissented.