## HAYS *v.* GOLDMAN.

### Opinion delivered February 21, 1903.

1. LEASE—RENEWAL.—Where a lease for a period of nine months gave the lessee the option to renew the lease for one year from its expiration, and the lessee retained possession of the premises after expiration of the lease, without giving notice of his desire to terminate the lease sooner, he will be held to have elected to renew the lease for one year. (Page 253.)

2. SAME—SURRENDER.—Where a tenant abandoned the leased premises before expiration of his lease, and the landlord took possession and leased the premises to another for a reduced rent, it was error, in an action by the landlord to hold the tenant liable for the difference in the rents, to refuse to submit to the jury the question whether there was a surrender of the lease, and not merely a reletting on the tenant's account, if there was evidence that would justify a finding that the landlord dealt with the property after its abandonment in such way as to indicate that he regarded the tenant's estate as at an end. (Page 254.)

Appeal from Jackson Circuit Court.

FREDERICK D. FULKERSON, Judge.

Reversed.

STATEMENT BY THE COURT.

Goldman was the owner of two store buildings in the town of Newport, known as "racket stores." On the 30th day of March, 1899, he leased these buildings to one Hayes for a period of nine months from the 30th day of March, 1899, until the 30th day of December, 1899, for a monthly rental of $75, to be paid in advance. The lease gave Hayes the option to continue the lease for the period of one year from the 30th day of December, 1899, to the 30th day of December, 1900, at the same rental and on the same terms.

Goldman lived in St. Louis, and this contract was made and

signed by L. Minor, his agent at Newport. On the 30th day of December, 1899, Hayes prepared and sent to the office of Minor the following note:

"MR. L. MINOR,
    "Agent J. D. Goldman, City:

"I have decided to give up the two racket stores. Will not want them for 1900. Would, however, like to retain them for the month of January.
    [Signed]    "JOHN C. HAYES."

This notice was carried by an employee of Hayes to the office of Minor, and there delivered to one Ferguson, a clerk in Minor's office. Ferguson read the notice and then remarked: "That is all right." Without taking further steps to notify Minor, Hayes remained in the stores. On the first of January, 1900, he paid the rent for January in advance. About this time he was told that Minor considered that he had elected to keep the property under his contract for another year. He protested against this view of the matter, and declared his intention of holding only during the month of January. About the last of January he moved out of the stores, and returned the keys to Minor. Before Hayes moved out, Goldman, the owner, learning that Hayes intended to abandon the stores, agreed with one Stewart, acting for the Newport Builder & Supply Company, that he would rent the stores to the company for the remainder of the year at a rental of $60 per month, and told him that Minor would reduce the contract to writing. When Hayes moved out of the stores, he, as before stated, returned the keys to Minor, and shortly afterwards Stewart and his company moved in.

After the end of six months Goldman brought this suit to recover the rent of that period from Hayes. Hayes for answer set up, first, that the plaintiff had consented that he might occupy the premises during the month of January, and quit at the end of that time; second, that about the last of January he had surrendered the possession of the stores to the agent of plaintiff, and that the surrender was accepted, and that he was thus released from further liability under said lease.

After hearing the evidence the circuit court directed a verdict for plaintiff in the sum of $75, that being the amount due under the Hayes contract, if that was still in force, less the amount re-

ceived from Stewart. Judgment was entered accordingly, and defendant appealed.

*Gustave Jones, Jos. W. House* and *M. House,* for appellant.

There was a sufficient delivery of the notice. 37 N. Y. S. 374. Notice was really unnecessary. 53 Atl. 103; 1 Tayl. L. & T. § 332. After notice appellant became only a tenant at will. 47 Atl. 534; 1 Wood. Landl. & T. § 18. The notice was in apt time. 93 Me. 185.. When the tenant surrenders possession, and the same is accepted by the landlord, the lease and all liability for further rent are extinguished. 92 Ind. 82; 8 B. &. C. 324; 1 E. D. Smith, 147; 11 Mass. 494; 16 Me. 212; 96 Mass. 176; 30 N. Y. 462-5; s. c. 86 Am. Dec. 394; 12 C. B. (N. S.) 334; 39 Mo. 115-119; 19 Barb. 136; 6 Wend. 569; 78 Wis. 345; 74 Wis. 464; Tied. Real Prop. § 198; 25 Am. St. 145; 145 Ill. 238; 101 Ind. 95; 62 N. J. L. 779; 2 Tayl. L. & T. § 473; Washb. Real Prop. § 549; 96 Mass. 180; 101 Ind. 95. It would be inequitable and unjust to hold appellant liable for future rents after surrender of possession. 6 M. & Gr. 671; 90 Cal. 507; 16 Me. 212.

*M. M. Stuckey,* for appellee.

Appellant's contract terminated on December 30th, 1899, and he was holding over and had begun a new term when he gave notice. The language "until December 30, 1899" is exclusive in its meaning, and any holding beyond that time started a new period. Bouv. Dict.; 26 Am. & Eng. Enc. Law, 11; 39 Barb. 9; 39 Am. Dec. 692; 17 N. Y. 502; 19 Misc. 524; 18 Am. & Eng. Enc. Law (2d Ed.) 405; 61 Ark. 380; 33 Ark. 627; 65 Ark. 471; Tied. Real Prop. § 172. The landlord has the right to elect to hold the tenant to his renewed contract. Tied. Real Prop. § 172; Wood. L. & T. 20, 23; 51 N. Y. 309; Woodf. Landl. & T. 218; 1 T. R. 162; 4 Cow. 349; 2 Wend. 507; 1 Den. 113; 11 Barb. 33; 5 Robt. 248; s. c. 6 *Id.* 441; 4 N. Y. 270; 19 H. &. W. 29; 1 Daly, 384. To discharge the tenant, the evidence must be such as to warrant the presumption that the landlord intended to resume possession. 4 Phila. 57; 69 Pa. St. 316; 1 Daly, 485.

RIDDICK, J., (after stating the facts). There were two questions at issue in this case. The first was, whether Hayes had elected to extend his tenancy for a term of 12 months from December 30, 1899, as under his contract he had the right to do. Grant-

ing that there was such an election on the part of Hayes, the next question is whether there was subsequently a surrender of such term.

The first question, we think, must be answered in the affirmative, for the evidence does not show that the notice which defendant claims that he gave terminating the tenancy was ever delivered to either Goldman or his agent, Minor. As defendant held over after the expiration of his term without any consent on the part of the plaintiff, except as shown in the contract, it must be presumed that he was holding under the contract, and had elected to hold the premises for another year. On this point we agree with the argument of counsel of Goldman, in whose brief the decisions bearing on the question are collated. The contention of appellant in reference thereto is overruled.

The contention of the appellant on the second question presented is that there was evidence tending to show that there was a surrender of the lease, and that the circuit judge erred in refusing to submit that question to the jury. Under the evidence this raises a more difficult point for our consideration.

A surrender has been said to be the yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder, whereby the estate for life or years is by mutual agreement drowned in the estate in reversion or remainder. 18 Am. & Eng. Enc. Law (2d Ed.) 355. A surrender may be made by agreement of parties or by operation of law, and when made the estate of the lessee terminates, and the relation of landlord and tenant cases. There was no express agreement for a surrender in this case, and the only question we have is whether there was evidence sufficient to go to the jury on the question as to whether there was a surrender by operation of law.

Now, any acts which are equivalent to an agreement on the part of a tenant to abandon, and on the part of the landlord to assume possession of the demised premises on his own account, amount to a surrender of the term, by operation of law. 1 Washburn, Real Property, (6th Ed.) § 739; *Williamson* v. *Crossett,* 62 Ark. 393; *Kneeland* v. *Schmidt,* 78 Wis. 345; *Talbot* v. *Whipple,* 96 Mass. 180; 18 Am. & Eng. Enc. Law, (2d Ed.) 364.

An express agreement to accept the surrender need not be shown, for the landlord's assent may be implied by operation of law from the manner in which he uses the property after its abandonment by the tenant. 2 Wood, Landlord & Tenant, (2d Ed.) 1173.

If the landlord takes charge of the property after the tenant has abandoned it merely to protect it from injury, or if, knowing that the tenant does not intend to return, he rents it for the account of the tenant, these acts may not show assent on his part, but if after an abandonment he takes possession, and rents the premises on his own account, this is conclusive evidence of a surrender. *Williamson* v. *Crossett,* 62 Ark. 393; *Underhill v. Collins,* 132 N. Y. 269, and other cases cited above.

The law on this point is stated in a recent edition of a work on the subject as follows: "When a tenant abandons premises, and returns the keys to the landlord, the latter may accept the keys as a surrender of possession, thereby determining the tenant's estate, and relet the premises on his own account, or he may accept the keys and resume possession conditionally by notifying the tenant or other person returning the keys that he will accept the keys but not the premises, and relet them on the tenant's account, in which case the tenant may be held for any loss in rent caused by his abandonment and the subsequent reletting." 2 McAdam, Land. & Ten. (3 Ed.) 1283.

If the case of *Myer v. Smith,* 33 Ark. 632, holds that the landlord may on abandonment take possession and relet on his own account and still hold the tenant on his contract, it is not supported by any of the decisions, and is overruled by the case of *Williamson* v. *Crossett, supra.* But, as we understand that case, it means that the landlord may take possession for the tenant, and rent for him without releasing the tenant from his contract.

Now, in this case the tenant abandoned the premises, and returned the keys to the agent of the landlord, and the landlord took possession, and rented the premises to another. It is plain that if he took possession for himself, and afterwards rented these stores on his own account, he could not afterwards claim that Hayes was still in possession as his tenant, for his own acts are inconsistent with such a claim. But, so far as we can see, there is little, if any, evidence that shows to the contrary. The only evidence in the transcript to which we are referred tending to show that Goldman took possession and relet for Hayes, and intending still to hold him as his tenant, is found in the testimony of Hayes as brought out on his cross-examination. After Hayes was asked on cross-examination about the notice which he claimed to have sent to the office of Mr. Minor on the 30th of December, and which

notice the clerk had testified that he delivered to Ferguson, a clerk in Minor's office, the examination proceeded as follows:

"Q. How do you know who received it? All you know is just what your clerk told you about it?

"A. It was mentioned on the 1st day of January by Mr. Ferguson.

"Q. You were occupying the store at the time they collected the rent for the month of January?

"A. Yes, sir.

"Q. You had notice at that time that they would hold you to your contract, didn't you? You were then in the building after the time had expired?

"A. Yes."

Counsel for plaintiff rely upon these last questions and answers thereto as showing that Goldman did not accept the surrender. This proof, he says, "shows that appellee told appellant that he would hold him to his contract, and that the subsequent entry and reletting by the landlord was for the tenant." But to our minds there is doubt about this. It will be noticed that two questions were put to the witness. To repeat these questions, he was asked, first: "You had notice at that time that they would hold you to your contract, didn't you?" and then, without waiting for a reply to that question, the following question was put: "You were then in the building after the time had expired?" The witness then answered, "Yes." Now, the witness, who was also defendant, had admitted, for it was one of the conceded facts, that he remained in the buildings one month after the expiration of the first term for which he rented. He claimed that this was under a new contract of tenancy for a month only, but in any event he was there in the house. The last question, then, he could only answer in the affirmative. So there was no real necessity of putting that question, and by putting it before the preceding question was answered we are left in doubt as to whether the affirmative answer of the witness was in response to that or the first question.

But, if we concede that his answer was in response to both questions, we are still not free from difficulty, for it is evident that the witness was then speaking of what happened on the 1st of January, when the advance payment of rent for that month was made. If this answer referred to the first question, it is still plain that he was not testifying about a rejection of an offer to surrender which, if made, occurred about the last of January, but he referred to the

contention of Mr. Minor that by holding over to the first of January he had elected to take the premises for another year and that they would for that reason hold him to his contract. Now, treating it as proved that Minor had on the first of January notified him that the plaintiff intended to treat him as having elected to hold for another year, and would hold him to the contract, we must remember that this was on the first of January, before any abandonment or offer to surrender had taken place. The contest at that time was not over an abandonment or offer to surrender, but over the fact that plaintiff and defendant differed as to the duration of the tenancy; one contending that it continued for another year, the other that it expired on the last of January. Afterwards, during the month of January, a month for which defendant had paid the rent, the plaintiff, Goldman, in St. Louis, hearing that Hayes intended to abandon the premises, made an agreement with one Stewart, representing the Newport Builder & Supply Company, that he would rent these stores to that company. Stewart testified that he went to St. Louis about the 20th of January, and made a proposition to Goldman to rent the property. "He told me," said Stewart, "that Mr. Minor and Mr. Hayes were having some trouble over the place, and he didn't know what to do, and I told him that was not my trouble. I wanted the place, and must have an answer that day. He told me to come back at four o'clock that afternoon, and he would give me an answer. I came back at four o'clock, and he told me that I could have it, but that he would write to his agent about the matter, and said he would fix up the contract."

This, as before stated, was about the 20th day of January, a month for which Hayes had paid the rent. Afterwards Mr. Minor drew up the contract, and Stewart and his firm took possession of the house about the last of January or first of February, shortly after Mr. Hayes moved out. But it is said that Goldman made this contract because he had been told that Hayes intended to move out. This is doubtless true, but he made it before Hayes moved out, and without any notice to him, so far as the record shows. Under this view of the facts, we are not able to say, as a matter of law, that there was no surrender of the premises. On the contrary, we think that the evidence tends very strongly to show that there was a surrender.

Counsel for Goldman, quoting in their brief from Wood on Landlord & Tenant, say that "something more than an abandon-

ment by the tenant and a delivery to and acceptance of the keys by the landlord must be shown. It must also be shown that he subsequently dealt with the property in such a manner as to clearly indicate that he regarded the tenant's estate at an end." That is, no doubt, a correct statement of the law, but in this case, in addition to abandonment by the tenant and acceptance of the keys by the landlord, it was shown that the landlord proceeded at once to relet the premises to another, and, so far as we can see, he did it without any notice to the tenant that the reletting was on his account, and in a way that might well justify a court or jury in finding that he regarded the tenant's estate at an end. *Williamson* v. *Crossett,* 62 Ark. 393.

In conclusion, while we are of the opinion that the court correctly ruled that the tenant by holding over became under his contract liable as a tenant for another year, yet we think that the court erred in holding as a matter of law that there was no surrender of this extended term. As the case must be remanded for a new trial, and as it seems that the evidence was not all brought out on the first trial, we will express no opinion as to whether the undisputed facts in proof do not make out a case of surrender by the tenant and acceptance by the landlord.

For the error indicated the judgment is reversed, and a new trial ordered.