WEINGARTEN/ARKANSAS, INC. *v.* ABC
INTERSTATE THEATRES, INC., Plitt Southern
Theatres, Inc., and Warco, Inc.

CA 89-5                                                789 S.W.2d 1

Court of Appeals of Arkansas
Division II
Opinion delivered May 9, 1990
[Supplemental Opinion on Denial of Rehearing July 5, 1990.*]

*Rose Law Firm, A Professional Association,* by: *Richard T. Donovan* and *James H. Druff,* for appellant.

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.,* by: *Leonard L. Scott* and *Frank S. Hamlin,* for appellees ABC Theatres and Plitt Southern Theatres, Inc.

MELVIN MAYFIELD, Judge. Appellant, Weingarten, brought this action as landlord of some commercial property in Little Rock against appellees, ABC Interstate Theatres, Inc., Plitt Southern Theatres, Inc., and Warco, Inc. The action involved a 1975 lease wherein Weingarten leased 12,000 square feet in the Markham Plaza Shopping Center to appellee ABC for a term of twenty-five years. The lease was subsequently assigned to Plitt and, later, to Warco. Warco failed to pay rent after July 1986, and Weingarten brought suit for immediate possession of the premises without termination of the lease and for unpaid back rent. In the second amended complaint, Weingarten stated:

---

*Jennings, J., would grant rehearing. Rogers, J., not participating.

"[Weingarten] is entitled to and must obtain immediate possession of the premises, in order to mitigate damages by cleaning and generally making such repairs and improvements as are necessary and to show the premises to prospective tenants." In May of 1987, the court entered an order granting possession to Weingarten. Prior to trial, Weingarten refused to relet the premises to another interested theatre chain under the same terms as the original lease and, after making substantial changes in the property, subsequently relet the premises to two businesses at higher rentals for shorter durations.

On February 8, 1988, ABC and Plitt filed a counterclaim for declaratory judgment, alleging that Weingarten had failed to mitigate its damages and that its conduct constituted a constructive termination of the lease and assignments. Specifically, ABC and Plitt alleged that Weingarten had failed to accept a willing lessee at a rent equal to the amount listed in the original lease and that Weingarten treated the property as its own without regard to any leasehold estate. According to ABC and Plitt, Weingarten could not completely change the nature of the physical premises and still require appellees to be liable for the remainder of the lease.

After trial before the court, judgment was entered for Weingarten in the amount of $56,878.00, but the court found that Weingarten breached its duty to mitigate damages in May of 1987, when it was awarded a writ of possession. The judgment contained the following conclusions of law:

2. Under Arkansas law there is a duty on the landlord to mitigate damages upon a tenant's default. The burden to prove failure of the duty is upon the tenant.

3. Weingarten's duty to mitigate damages arose on May 5, 1987, the date Weingarten was awarded a Writ of Possession.

4. Weingarten breached the duty of mitigation when it failed and refused to rent the premises to Leroy Mitchell and/or corporations of which he was an executive officer, all of whom were financially responsible, upon the same terms as the Warco lease. Accordingly, all damages ceased accruing as of May 5, 1987.

. . . .

6. Weingarten's remodeling and reletting of the premises did not result in an abandonment of the premises, or acceptance of surrender thereby of the lease. However, defendants are entitled to a declaratory judgment giving them credit against any future liability under the lease to the extent of payments made by present and future tenants. The counterclaim should be otherwise dismissed with prejudice.

On appeal, appellant argues the following points: (1) under Arkansas law, a landlord is not under a duty to mitigate damages upon the tenant's abandonment of the premises; (2) even applying contract principles of law to this case, appellant was under no obligation to mitigate its damages; (3) even if the general rule against mitigation in such instances is overruled, the new standard should not be applied retroactively; (4) if this court retroactively imposes a duty of mitigation on landlords, this duty should be limited to residential leases; and (5) if Weingarten did have a duty to mitigate, it satisfied that duty by making a reasonable good faith effort to relet the premises.

In their cross-appeal, ABC and Plitt argue that the trial court erred in finding that Weingarten's actions with regard to the premises did not amount to an acceptance of surrender of the leasehold. Because we agree with appellees' argument on their cross-appeal, we need not address arguments made by appellant on direct appeal.

In *Hayes* v. *Goldman*, 71 Ark. 251, 254-55, 72 S.W. 563, 564 (1903), the Arkansas Supreme Court stated:

> A surrender has been said to be the yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder, whereby the estate for life or years is by mutual agreement drowned in the estate in reversion or remainder. 18 Am. & Eng. Enc. Law (2d Ed.) 355. A surrender may be made by agreement of parties or by operation of law, and when made the estate of the lessee terminates, and the relation of landlord and tenant cases [sic]. There was no express agreement for a surrender in this case, and the only question we have is whether there

was evidence sufficient to go to the jury on the question as to whether there was a surrender by operation of law.

Now, any acts which are equivalent to an agreement on the part of a tenant to abandon, and on the part of the landlord to assume possession of the demised premises on his own account, amount to a surrender of the term, by operation of law. 1 Washburn, Real Property, (6th Ed.) Section 739; *Williamson* v. *Crossett*, 62 Ark. 393; *Kneeland* v. *Schmidt*, 78 Wis. 345; *Talbot* v. *Whipple*, 96 Mass. 180; 18 Am. & Eng. Enc. Law, (2d Ed.) 364.

An express agreement to accept the surrender need not be shown, for the landlord's assent may be implied by operation of law from the manner in which he uses the property after its abandonment by the tenant. 2 Wood, Landlord & Tenant, (2d Ed.) 1173.

If the landlord takes charge of the property after the tenant has abandoned it merely to protect it from injury, or if, knowing that the tenant does not intend to return, he rents it for the account of the tenant, these acts may not show assent on his part, but if after an abandonment he takes possession, and rents the premises on his own account, this is conclusive evidence of a surrender. *Williamson* v. *Crossett*, 62 Ark. 393; *Underhill* v. *Collins*, 132 N.Y. 269, and other cases cited above.

The law on this point is stated in a recent edition of a work on the subject as follows: "When a tenant abandons premises, and returns the keys to the landlord, the latter may accept the keys as a surrender of possession, thereby determining the tenant's estate, and relet the premises on his own account, or he may accept the keys and resume possession conditionally by notifying the tenant or other person returning the keys that he will accept the keys but not the premises, and relet them on the tenant's account, in which case the tenant may be held for any loss in rent caused by his abandonment and the subsequent reletting." 2 McAdam, Land. & Ten (3d Ed.) 1283.

71 Ark. at 254-55. Thus, we see that an agreement to terminate the lease need not be express but may be implied. The matter has

been more fully explained as follows:

> The question whether or not there has been such an acceptance as will release the tenant is primarily a question of the landlord's intention, and is usually one of fact. An express acceptance need not be shown in order to release the tenant; the landlord's consent may be implied from circumstances and unequivocal acts equivalent to an agreement on the landlord's part to accept and inconsistent with the continuance of the lease. However, the landlord's acts must go beyond entering the premises and exercising the rights of an owner to keep them safe from damage or doing things reasonably necessary to minimize damages. Thus an acceptance will be implied where the landlord takes possession of the premises and uses them for his own purposes, as where he remodels them so as to make them unavailable for the purposes for which they were leased and untenantable for the period of remodeling, or where he relets them before the tenant vacates, and ordinarily is implied where he tears down all the buildings on the premises.

> It has also been held that an acceptance will be implied where the landlord unqualifiedly takes absolute possession of the premises unless he expresses an intention to hold the lessee for rent or the lease authorizes such action. It has further been adjudicated that if the landlord wishes to prevent an acceptance by operation of law he must either by word or act, convey to the tenant notice that he is resuming possession for the tenant's benefit and not his own benefit, but, where the landlord's conduct is inconsistent with his notice that he is acting for the tenant, re-entry will be an acceptance. [footnotes omitted]

52 C.J.S. *Landlord & Tenant* Section 493, at 433 (1968). *See also Consolidated Sun Ray, Inc.* v. *Oppenstein*, 335 F.2d 801, 810-11 (8th Cir. 1964); *Bove* v. *Transcom Electronics*, 353 A.2d 613, 616 (R.I. 1976); *Roosen* v. *Schaffer*, 621 P.2d 33, 36 (Ariz. App. 1980); *Vineyard Village — Georgia, Inc.* v. *Crum*, 221 S.E.2d 208, 210 (Ga. App. 1975).

In the instant case, the appellant admitted that it made over $200,000.00 worth of alterations to the premises after it obtained

the writ of possession, even though the evidence shows that it could have rented the property to a tenant on the same terms as the original lease. Moreover, when the appellant finished remodeling, the premises could no longer be used for the purpose for which they were leased to appellees. Although these facts were either admitted or not in dispute, the trial court's conclusions of law held that appellant's actions in obtaining possession of the leased property and the remodeling and reletting of that property did not amount to a surrender of the lease and acceptance of the leased property. Therefore, instead of holding that appellant's future liability had ended, the trial court held only that appellees were entitled to credit against future liability under the lease to the extent of payments made by the present or future tenants.

Under the authority of the cases cited above, we believe that appellant's conduct with respect to the property was so inconsistent with its claim to be acting for appellees that it amounted to an acceptance of surrender of the lease. Accordingly, we affirm the trial court's judgment holding appellees liable for the lease rentals due before May 5, 1987, but reverse as clearly erroneous that portion of the judgment holding appellees liable for any obligation on the lease after May 5, 1987.

Affirmed in part; reversed in part.

CORBIN, C.J., and JENNINGS, J., agree.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JULY 5, 1990

791 S.W.2d 721

*Rose Law Firm, A Professional Association,* by: *Richard T. Donovan,* for appellant.

No response.

MELVIN MAYFIELD, Judge. The appellant has filed a petition for rehearing in which it contends that our opinion did not address the effect of contractual provisions on our holding that appellant "impliedly" accepted surrender of the premises. We did not discuss this point directly because we thought our opinion made it clear that we found under the facts in this case when applied to the case of *Hays* v. *Goldman*, 71 Ark. 251, 72 S.W. 563 (1903), from which we quoted, that "appellant's conduct with respect to the property was so inconsistent with its claim to be acting for appellees that it amounted to an acceptance of surrender of the lease." 31 Ark. App. 109, 789 S.W.2d 1.

We did not think it necessary to cite authority that parties are as free to change their contracts (or leases) as they are to make them. Even if appellant had a written provision in its lease that it would not, or could not, accept the surrender of the lease, we still think it could do so unless the other party would not agree to that action.

In addition, the case cited in the petition for rehearing, *Knight* v. *OMI Corporation*, 568 P.2d 552 (Mont. 1977), as authority for the proposition asserted on rehearing, holds that a lease may give the landlord the *right* to reenter and resume possession of the leased premises and still hold the tenant liable for subsequently accruing rents for any deficiency resulting from reletting, but the language must be clear. In the cited case the language was held not to be clear because of conflicting provisions.

In the instant case, if we did not find appellant's conduct so inconsistent with its claim that it did not accept surrender of the property, we would have to hold the provisions of the lease in such conflict that the holding in the *Knight* case would cause us to reach the same result we reached in our original opinion.

Rehearing denied.

JENNINGS, J., would grant.

ROGERS, J., not participating.