Chief James VIRDEN, Leroy Boas, Boyce Alford, Lennis Coleman, Arthur Leath and Vernon McMurray, Individually
*v.* Dois ROPER

89-263                                          788 S.W.2d 470

Supreme Court of Arkansas
Opinion delivered April 23, 1990

*Winston Bryant*, for appellants.

*Bart Mullis Law Firm*, by: *Bart Mullis*, for appellee.

STEELE HAYS, Justice. Appellants-defendants are members

of the Pine Bluff Civil Service Commission and the Chief of the Pine Bluff Police Department. Appellee-plaintiff Dois Roper is a captain in the Pine Bluff Police Department. Appellants have been sued as individuals and in their official capacities. They bring this interlocutory appeal only as individuals.

In 1985 the Commission conducted an examination for the position of assistant chief of police. Dois Roper, four lieutenants and another captain took the examination. Lt. Robert G. Brown emerged as the successful applicant.

Following the hiring of Robert Brown, Roper filed an action in the United States District Court against the appellants individually and in their official capacities. Citing 42 U.S.C. § 1983, the complaint alleged Roper was denied due process and equal protection under the 14th Amendment based on violations of state statutes affecting civil service procedures, namely: that Brown's promotion was in contravention of Ark. Code Ann. § 14-51-301 (1987), that interviews by the Commission failed to follow the provisions of § 14-51-301, that promotion was not based on an open competitive examination, that an oral examination failed to establish a measureable standard, that Roper was not notified of his final rating in comparison to the other candidates, nor allowed to inspect the test results and that no promotion list for assistant chief was established prior to the election.

Appellants moved for summary judgment, and the District Court expressed serious doubt that Roper possessed a property interest, noting that the complaint spoke essentially in terms of the violation of state statutes on civil service which, absent a constitutional violation, do not give rise to a § 1983 claim, citing *Baker* v. *McCollam*, 443 U.S. 137 (1979). The District Court saw the issues as a matter of harmonizing state statutes and civil service regulations, issues more appropriate to state courts, and elected to abstain. The complaint was dismissed without prejudice. *Roper* v. *City of Pine Bluff, et al.,* No. PB-C-86-735 (November 17, 1987).

Roper then filed a complaint in Jefferson Circuit Court on essentially the same grounds, praying for declaratory judgment, that he be installed as assistant chief with back pay, and for an award of damages, attorneys fees and costs. The appellants, in

their individual capacities, moved for summary judgment, contending that violations of state statutes, absent a constitutional right, do not give rise to a § 1983 cause of action, that the complaint failed to state an equal protection claim under the 14th Amendment, and that the doctrines of res judicata and qualified immunity barred the plaintiff's cause of action. Appellants' motion was accompanied by a number of affidavits but the issues were submitted to the trial court on memorandum briefs. The motion was denied and by this appeal appellants renew the arguments advanced in the trial court. For reasons to be explained, we reverse and remand the cause to the trial court for further proceedings.

We must first address jurisdiction and our authority to hear an appeal at this stage of the litigation. While it remains unsettled whether it is obligatory upon state courts to exercise such jurisdiction, the state court option to assume jurisdiction over § 1983 cases is routinely exercised. *Martinez v. California*, 444 U.S. 277 (1980); *Arkansas Writers' Project, Inc. v. Ragland*, 293 Ark. 395, 738 S.W.2d 402 (1987); *Burden v. Hayden*, 275 Ark. 93, 627 S.W.2d 555 (1982); S. Steinglass, *Section 1983 Litigation in State Courts*, §§ 9.1, 9.2.

The other jurisdictional consideration concerns the finality of the order. In *Jaggers v. Zolliecoffer*, 290 Ark. 250, 718 S.W.2d 441 (1986), we dismissed an interlocutory appeal of a § 1983 action for lack of finality. But we distinguished *Jaggers* in a subsequent decision, *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987), by pointing out that the qualified immunity claimed by the appellants in *Jaggers* was based on a specific statute which provided only qualified immunity from *liability*, whereas the immunity defense asserted in *Robinson*, as in this case, is liability from *suit*. The appealability of a denial of summary judgment based on qualified immunity from suit is clearly established. *Robinson v. Beaumont, supra; Mitchell v. Forsyth*, 472 U.S. 511 (1985); *and see Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1948). Ordinarily, that is the only issue that may be raised by an interlocutory appeal. However, when there are closely related questions of law which, in good sense and judicial economy, ought to be decided, we will address those as well. That was the course adopted in *Drake v. Scott*, 812 F.2d 395 (8th Cir. 1987), with which we agree.

In view of the foregoing, the issue we now address on appeal is whether the trial court properly denied appellants, in their individual capacity, qualified immunity against the § 1983 action.[1]

Appellants first contend the dismissal by the District Court renders appellee's § 1983 cause of action res judicata. We disagree. The order itself (which is all the record contains pertinent to this issue) reflects that dismissal was grounded on the abstention doctrine, and the general comments questioning whether a § 1983 cause of action was stated were merely dicta. Those comments, seemingly gratuitous, were not essential to the holding of the District Court and do not preclude the appellee from filing suit in state court. *See Leslie* v. *Bolen,* 762 F.2d 663 (8th Cir. 1985).

Laying jurisdiction aside, to be entitled to qualified immunity, the actions of an individual must not violate "clearly established statutory or constitutional rights of which a reasonable person would have knowledge." *Robinson* v. *Beaumont, supra; Mitchell* v. *Forsyth, supra.* Such violations must relate to federal statutes and constitution, however, in order to give rise to a § 1983 action. M. Schwartz, *Section 1983 Litigation* §§ 3.1, 3.11 (1986); R. Rotunda, *Treatise on Constitutional Law* Vol. 2, §§ 19.19, 19.20 (1986). Appellants argue that, since no federal statutory or constitutional violations are shown to have occurred, no § 1983 action is available to appellee, rendering the issue of qualified immunity moot. *See Drake* v. *Scott, supra.* They maintain in the alternative if a violation of a constitutional right occurred, it is not a "clearly established" right and, hence, appellants are entitled to qualified immunity under *Mitchell, supra.* We agree, and so we first consider whether the allegations of the complaint meet that requirement.

Appellee alleges violations of Ark. Code Ann. § 14-15-301

---

[1] Qualified immunity under § 1983 has developed under its own federal common law, and while there are some obvious similarities to state immunities, they are distinct doctrines. *See* S. Steinglass, *Section § 1983 Litigation in State Courts* § 15.2(b), § 15.3 (1987); Shepard's/McGraw Hill, *Civil Action Against State Government* § 6.10 (1982). While there may be state immunities available to appellants in either their individual or official capacity, that issue has not been raised and is not addressed in this opinion.

(1987). That section contains numerous provisions affecting civil service commissions of cities of the first class. Appellee asserts that "at the very least" the appellants violated § 301(4)(A)(ii), providing that no person shall be eligible for advancement from a lower to a higher rank (except in an emergency) until he or she shall have served one year in the lower rank, and § 301(6)(A), stating that the Commission shall certify to the department head the three highest names on the eligibility list, from which the department head shall select one of the three for appointment.[2] But the issue is not whether one or more of these provisions may have been misinterpreted or disregarded. The issue is whether the alleged noncompliance with the civil service statutes constitutes a violation of appellee's constitutional rights.

This court has dealt with some frequency with cases in which an individual aggrieved under the civil service statutes has filed suit to declare a particular practice or course of action by a commission to be in violation of law. *See*, for example, *Worth* v. *Civil Service Commission*, 294 Ark. 643, 746 S.W.2d 364 (1988); *Bradley* v. *Bruce*, 288 Ark. 342, 705 S.W.2d 431 (1986); *Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983); *Civil Service Commission* v. *Matlock*, 205 Ark. 286, 168 S.W.2d 424 (1943). It is clear that civil servants have a right under the act to challenge the disputed conduct. But it is by no means clear that such challenges are constitutionally based. We have never held that a breach of civil service statutes has constitutional overtones to the extent that any misstep in the civil service process, even a well intentioned but incorrect interpretation of the statutes, subjects the individual commissioners to liability for civil damages. Indeed, we are not aware of any authority for such a conclusion, and nothing in the act, or in our several cases, or in appellee's brief compels such a course. Both parties cite *Dalton* v. *City of Russellville*, 290 Ark. 603, 720 S.W.2d 918 (1986), for their position. But it was not necessary in that case to decide whether Dalton, a Russellville police officer discharged for allegedly accepting outside employment without permission in violation of department rules, had a property interest in continued employment, because it was clear that he

---

[2] The record indicates that Robert Brown had served as lieutenant from September 1, 1984, and was promoted to assistant chief on October 3, 1985.

had received all the process he was due under the civil service statutes in the form of written notice of the grounds for discharge, right to a hearing and an appeal. And even if Dalton had a property interest in his continued employment, which we did not expressly decide, it would not necessarily follow that such interest in continued employment translates into a constitutionally protected interest in promotion to higher rank.

■ Admittedly a state may create a constitutionally protected liberty or property interest through statutory or regulatory measures. *Hewitt* v. *Helms*, 459 U.S. 466 (1983); *Farmer* v. *Lane*, 864 F.2d 473 (7th Cir. 1988); *Edwards* v. *Johnson Co. Health Department*, 885 F.2d 1215 (4th Cir. 1989). In *Hewitt*, for example, the Supreme Court found a liberty interest had been created through the use of repeated mandatory language in certain state regulations along with specified substantive predicates, producing a constitutionally protected interest not otherwise extant. *See also* S. Herman, *The New Liberty: The Procedural Due Process Rights of Prisoners and Others*, 59 N.Y.U. L. Rev. 482 (1984).

■ Even so, for the limited scope of this review, it is not necessary for us to determine at this time whether there is a constitutional right, if we initially determine that such a constitutionally protected interest has not yet been clearly established.

> Whether an official may prevail in his qualified defense depends on the 'objective reasonableness of his conduct as measured by reference to clearly established law.' No other 'circumstances' are relevant to the issue of qualified immunity. *Davis* v. *Scherer*, 468 U.S. 183 (1984). The analysis therefore ends if the court finds the federal law is not clearly established when the administrative official acted. R. Rotunda, *Treatise on Constitutional Law* § 19.29 (1986).

*See also Mitchell* v. *Forsyth, supra.*

Such an approach is also in keeping with traditional appellate review that we do not decide a constitutional question if the issue can be resolved on other grounds, *McNew* v. *McNew*, 262 Ark. 567, 559 S.W.2d 155 (1977). Consequently, if we determine first that this issue has not yet been clearly established, as that phrase

has been interpreted by the courts, we may thereby dispose of the question before us.

Our analysis is impeded by the fact that the Supreme Court has not sharply defined "clearly established" law within the context of qualified immunity, nor has some common ground emerged from the general case law. *See* M. Schwartz, *Section 1983 Litigation* § 7.13 (1986). That is to say, there is no real agreement among the courts on how firmly the law must be established or recognized.

However, for our purposes, that presents no real problem, for we have found that the law on the issue in this case, i.e., whether the violations of these statutes are of constitutional magnitude, is not clearly established under any definition of that phrase. Our research has turned up no precedent for that position either from our own case law or from any other jurisdictions. Nor has the question been one for which we ourselves can easily formulate an answer from the existing law in this area. To the contrary, the law under the *Hewitt* v. *Helms* line of cases is, at most, still in an evolving and unsettled state. *See* e.g. *Edwards* v. *Johnson County Health Department, supra; Farmer* v. *Lane, supra;* 59 N.Y.U. L. Rev., *supra.*

■ In light of the foregoing, we hold that for the purposes of this appeal it has not been shown that the alleged violation of the state statutes in question constitutes a clearly established right under the federal constitution. *See Mitchell, supra.* It follows that the appellants in their individual capacities are entitled to qualified immunity in this § 1983 action. Accordingly, the trial court's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

PRICE, J., not participating.