## WEINGARTEN/ARKANSAS, INC. *v.*
## ABC INTERSTATE THEATRES, INC.
### Plitt Southern Theatres, Inc., and Warco, Inc.

90-151                                                811 S.W.2d 295

Supreme Court of Arkansas
Opinion delivered June 17, 1991

*Wilson, Engstron, Corum & Dudley*, by: *Wm. R. Wilson, Stephen Engstrom*; and *Rose Law Firm, A Professional Association*, by: *Richard T. Donovan*, for appellant.

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Leanard L. Scott*, and *Frank S. Hamlin*, for appellees.

JACK HOLT, JR., Chief Justice. This case involves a dispute over a lease agreement. We granted certiorari to review the Arkansas Court of Appeals' decision, as the issues involve matters of legal principles of major importance and significant public interest. *See Weingarten/Arkansas, Inc.* v. *ABC Interstate Theatres, Inc.*, 31 Ark. App. 109, 789 S.W.2d 1 (1990).

On June 10, 1975, appellant Weingarten/Arkansas, Inc.

(Weingarten), as owner of the Markham Plaza Shopping Center in Little Rock, leased 12,000 square feet of space in that center to appellee ABC Interstate Theatres, Inc. (ABC). The lease was for a term of 25 years, with an annual rent of $54,000, payable in monthly installments of $4,500. In addition, ABC agreed to pay an additional rent equal to 10% of the gross receipts for each year in which receipts exceeded $540,000.

ABC subsequently assigned the lease to appellee Southern Theatres, Inc. (Plitt) in 1978, who, in turn, assigned the lease to appellee Warco, Inc. (Warco), in 1981. It is undisputed that in assigning the lease, both ABC and Plitt agreed to remain responsible under its terms.

Warco defaulted on the lease in July, 1986, when it ceased making payments. In March, 1987, Weingarten filed suit against the appellees in the Pulaski County Circuit Court alleging joint and several liability for Warco's default.

In its second amended complaint, Weingarten sought possession of the premises without terminating the lease agreement in accordance with section 18.03(b) of its lease agreement. The complaint declared that Weingarten "must obtain immediate possession of the premises, in order to mitigate damages by cleaning and generally making such repairs and improvements as are necessary and to show the premises to prospective tenants." It prayed for a writ of possession and "for all unpaid back rent and rent which continues to accrue."

Warco filed an answer to the second amended complaint on April 22, 1987, stating that it had quit possession of the premises, and praying that the complaint against it be dismissed.

The trial court granted a writ of possession to Weingarten on May 5, 1987. Thereafter, Weingarten conducted a market survey to determine the best rental value for the space and began negotiations with a number of prospective tenants. Weingarten eventually arranged to lease the premises to two retail stores, one of which was to occupy 8,000 square feet and the other to occupy the remaining 4,000 square feet. The leases were of shorter duration and higher rent per square foot.

Thereafter, ABC and Plitt amended their answer to Weingarten's first and second amended complaints by affirmatively

alleging that Weingarten failed to mitigate damages for the period of August 1, 1986 through February, 1988. In addition, they filed a counterclaim for declaratory judgment, requesting the trial court to construe the lease and subsequent assignments as having been "constructively terminated" by Weingarten as to any future liability of ABC and Plitt for the remainder of the lease term. Specifically, ABC and Plitt alleged that Weingarten failed to mitigate its damages by refusing to accept another theatre business for the same rent and, furthermore, that its conduct in completely changing the premises to accomodate retail stores, rather than another theatre enterprise, constructively terminated the lease. Alternatively, they requested a credit for any rents from new lessees, over and above the amount of base rent in the original lease, for the remainder of the term.

A trial was conducted before the circuit judge sitting as jury. The parties stipulated as to the provisions in the lease, Warco's default and abandonment of the building, and the appellees' joint and several liability.

The trial court found that Warco had made its last payment on July 26, 1986, and that charges were due and payable under the terms of the lease from July 1, 1986, through May 5, 1987 (the date Weingarten was granted a writ of possession). The amount owed consisted of rent and general property taxes and totalled $56,878.24. The trial court further found that Weingarten had adequate opportunities, since May 5, 1987, to rent the premises to a Texas based cinema corporation, upon the same terms and conditions set forth in the lease, but refused to do so. It recited the following conclusions of law: 1) Arkansas law imposes a duty on the landlord to mitigate its damages and such duty arose when Weingarten was awarded a writ of possession; 2) Weingarten failed to mitigate is damages when it refused to rent the premises to the Texas theatre corporation and thus all damages ceased accuring as of May 5, 1987; 3) Weingarten was entitled to damages from the appellees, jointly and severally, in the amount of $56,878.24; and 4) Weingarten's remodeling and reletting of the premises did not amount to an acceptance of Warco's surrender of the property; however, the appellees were entitled to a credit against any future liability to the extent of any payments made by present and future tenants. The counterclaim for declaratory relief was otherwise dismissed with prejudice.

On appeal to the Arkansas Court of Appeals, Weingarten raised five points of error, all challenging its duty to mitigate. It claimed damages of $107,367.24, allegedly sustained from July, 1986 through February, 1988. The appellees cross-appealed, claiming that the trial court erred in finding that Weingarten's actions did not amount to an acceptance of surrender of the lease.

The court of appeals declined to address Weingarten's arguments, as it agreed with the appellees that Weingarten's conduct, in refusing to relet the premises to an interested theatre chain and in completely altering the nature of the premises, was so inconsistent with its claim to be acting for the benefit of the appellees, that it amounted to an acceptance of surrender of the lease agreement. Thus, the appellate court affirmed the trial court's judgment holding the appellees liable for lease rentals due before May 5, 1987, but reversed that portion of the judgment holding the appellees liable for any obligation on the lease after that date.

Weingarten's petition to the court of appeals for rehearing was denied. On review, we disagree with the decisions of both the court of appeals and the circuit court and, accordingly, reverse and remand to the circuit court.

█ Included in Weingarten's petition for review is the question upon which our decision hinges: Can the parties to a lease agreement provide that a landlord's reentry and reletting of the premises will not constitute an acceptance of surrender and, further, that the landlord has no duty to mitigate upon the tenant's default? We hold that they can, if expressly stated in their contract.

The traditional view, under common law, gives a landlord three options when a lessee abandons the premises: 1) he may refuse to accept abandonment, let the premises lie idle, and sue the tenants as the rent matures; 2) accept the keys as a surrender of possession, thereby terminating the lease and reenter on his own account; or 3) reenter and relet for the tenant's account and hold the tenant liable for any difference in the agreed rent and that of the new tenant. *See Grayson* v. *Mixon*, 176 Ark. 1123, 5 S.W.2d 312 (1928); R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property*, § 6.80, 403 (1984).

Weingarten asserts that in order to avoid any disagreement as to its remedies under these general principles, the parties negotiated a lease agreement containing the following pertinent provisions:

18.03    This Lease and the term and estate hereby granted and the demise hereby made are subject to the limitation that if and whenever any Event of Default shall occur, the Landlord may, at its option, in addition to all other rights and remedies given hereunder or by law or equity, do any one or more of the following:

(a)    Terminate this Lease, in which event, Tenant shall immediately surrender possession of the premises to Landlord;

(b)    Enter upon and take possession of the leased premises and expel or remove Tenant and any other company therefrom, with or without having terminated the Lease;

provided, however,that Landlord shall not expel or remove Tenant from the leased premises or take possession thereof except pursuant to a judgment entered or writ issued in an appropriate legal proceeding.

18.04    Exercise by Landlord of any one or more remedies hereunder granted or otherwise available *shall not be deemed to be an acceptance of surrender of the premises by Tenant, whether by agreement or by operation of law, it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant.*

* * * *

18.06    In the event that Landlord elects to repossess the premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord . . . all rent and other indebtedness accrued to the date of such repossession, plus rent and other indebtedness hereunder required to be paid by Tenant to Landlord during the remainder of the lease term until the date of expiration of the term as stated in Article I diminished by any net sums thereafter received by Landlord through reletting the leased premises

during said period (after deducting expenses incurred by Landlord as provided in Section 18.07 hereof). In no event shall Tenant be entitled to any excess of any rent (or rent plus other sums) obtained by re-letting over and above the rent herein reserved. Actions to collect amounts due by Tenant as provided in this Section 18.06 may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the lease term.

18.07    In case of an Event of Default, Tenant shall also be liable for and shall pay to Landlord . . . broker's fees incurred by Landlord in connection with re-letting the whole or any part of the premises; the costs of removing and storing Tenant's or other occupant's property; *the costs of repairing, altering, remodeling or otherwise putting the leased premises into condition acceptable to a new tenant or tenants*, and all reasonable expenses incurred by Landlord in enforcing Landlord's remedies, including reasonable attorney's fees. . .

18.08    In the event of termination or repossession of the premises for an Event of Default, Landlord shall not have any obligation to re-let or attempt to re-let the premises, or any portion thereof, or to collect rental after re-letting; and *in the event of re-letting Landlord may re-let the whole or any portion of the premises for any period, to any tenant, and for any use and purpose.* [Emphasis added.]

Here, Weingarten elected to proceed with remedies under its contract, pursuant to sections 18.03(b) and 18.06, and resume possession of the premises without accepting surrender of the lease agreement. Such a "surrender clause" is well recognized in the law. Normally, if the landlord reenters and resumes the use and enjoyment of the premises for his own account, he terminates the lease, as a matter of law, insofar as his right to recover subsequently accruing rent is concerned. 49 Am. Jur. 2d, *Landlord and Tenant* §620, 592 (1970). *See also Hayes* v. *Goldman*, 71 Ark. 251, 72 S.W. 563 (1903). This rule will not hold true where the lease, via a "Surrender Clause," expressly allows a resumption of possession without surrender. *See Id.*; 52 C.J.S. *Landlord and Tenant* § 493, 433 (1963).

70

■■ In his treatise, *Friedman on Leases*, Vol. 2 § 16.302 (3d ed. 1990), Milton Friedman cautions, however, that in order for a "surrender clause" to be upheld, it must expressly define the parameters under which a landlord may reenter and assume possession and still hold the tenant liable. Such a clause should, for example, "permit the landlord to make a change in the character of the premises, structurally or otherwise." Section 18.07 of the lease meets this requirement by holding the tenant liable for "the costs of repairing, altering, remodeling, or otherwise putting the leased premises into conditions acceptable to a new tenant or tenants. . ." Section 18.08 further allows Weingarten to "re-let the whole or any portion of the premises for any period, to any tenant, and for any use and purpose." As stated by the Indiana Court of Appeals: "As long as the landlord does no more than exercise the rights accorded to it under the lease, the lessor's conduct will not result in a surrender of the lease by operation of law." *Grueninger Travel Serv. of Fort Wayne, Ind., Inc.* v. *Lake County Trust Co.*, 413 N.E.2d 1034 (1980). The lease provisions here were, admittedly, quite comprehensive. As a result, however, we do not find that Weingarten, in remodeling the premises and reletting to two retail businesses, acted outside its rights provided by the lease agreement.

We remand the case to the Pulaski County Circuit Court for a determination of damages not inconsistent with this opinion.

CORBIN and BROWN, JJ., not participating.