R.L. NEWTON, Individually and In His Official Capacity as
an Officer with the Arkansas State Police; and T. David
Carruth, Individually and In His Official Capacity as Deputy
Prosecuting Attorney for the First Judicial District, Monroe
County *v.*
Louis A. ETOCH

97-325 965 S.W.2d 96

Supreme Court of Arkansas
Opinion delivered March 19, 1998

*Winston Bryant*, Att'y Gen., by: *Rick D. Hogan*, Deputy Att'y Gen., for appellants.

*Charles E. Halbert, Jr.*, and *Ryals & Soffer, P.C.*, by: *Stephen Ryals*, for appellee.

ROBERT L. BROWN, Justice. This is an interlocutory appeal from a denial of a motion to dismiss filed by appellants R.L. Newton and T. David Carruth on immunity grounds. Appellee Louis A. Etoch, an attorney licensed to practice in Arkansas since

1989, filed a complaint in Phillips County Circuit Court against Newton, individually and in his official capacity as an officer with the Arkansas State Police, and T. David Carruth, individually and in his official capacity as deputy prosecuting attorney for the First Judicial District, Monroe County. In his complaint, Etoch alleged:

> Newton either acting under the direction and supervision of Carruth or conspiring with Carruth, drafted a materially false affidavit for warrant of arrest alleging therein that Etoch had given conflicting incriminating statements to Newton with regards to two automobiles owned by an alleged criminal defendant. The material statements in the affidavit were in accurate (sic), incomplete, and drafted in an effort to mislead the magistrate.

He further asserted that "Newton knew the allegations to be materially false [and] inaccurate, and Newton intentionally misled the Municipal Court Judge for the City of Hazen[.]" This resulted in the Municipal Judge's issuing an arrest warrant for Etoch. He again alleged that this was done at Carruth's "urging, direction and supervision" or "pursuant to the conspiracy."

Etoch further asserted that on June 22, 1995, as a result of that arrest warrant, while appearing on behalf of numerous clients in West Helena Municipal Court, Phillips County, he was arrested, handcuffed, and shackled by Newton without probable cause in a place, time, and manner "calculated and effectuated in an attempt to purposely embarrass, humiliate, and damage Etoch's business and personal reputation." He was then transported by car from West Helena to Hazen in Prairie County.

Upon his arrival in handcuffs and shackles at Hazen Municipal Court, Etoch alleged that he was met by a large number of people, including members of the media and Carruth, and added:

> Carruth, acting alone or with others, completely and totally outside his jurisdiction and without any authority under the law, orchestrated the public display of Plaintiff in custody, in handcuffs and shackles, as he appeared in court and alerted [media] sources to assure that the arrival and presentment of Etoch in court in Hazen be given maximum coverage and exposure, all for the malicious purpose of causing Plaintiff humiliation, embarrass-

ment, harm and damage to his personal and professional reputation and to detrimentally effect (sic) his law practice.

According to the complaint, Carruth also made statements to the media at that time that Carruth knew or reasonably should have known were false, all for the purpose of injuring him.

In addition, Etoch alleged in the complaint that Newton and Carruth undertook their activities with the expectation that Etoch would never be prosecuted and adds that a criminal information was never filed prior to the expiration of the speedy-trial period under Ark. R. Crim. P. 28. Etoch asserted causes of action against Newton and Carruth for a violation of his Fourth Amendment rights under 42 U.S.C. § 1983 and for the state-law torts of false imprisonment, malicious prosecution, abuse of process, and outrage. Etoch also sought damages against Carruth for slanderous statements made to members of the media and to others in connection with his arrest. Newton and Carruth moved to dismiss Etoch's complaint for lack of subject-matter and personal jurisdiction pursuant to Ark. R. Civ. P. 12(b)(1) and (2). They stated in their motion that the trial court lacked subject-matter jurisdiction due to sovereign immunity under Ark. Const. art. 5, § 20, and that personal jurisdiction was absent due to the immunity provisions for public employees and officials set out in Ark. Code Ann. § 19-10-305 (Repl. 1994). They further asked to dismiss the false imprisonment and slander counts due to the one-year statute of limitation found at Ark. Code Ann. § 16-56-104 (1987). Carruth asserted generally that he was not subject to suit due to prosecutorial immunity, which is absolute.

After a hearing, the trial court denied the motions to dismiss and entered an order, which concluded: (1) accepting as true the allegations in the complaint, the false imprisonment and slander counts were not time-barred; (2) sovereign immunity did not protect officers and employees of the state from their malicious actions; and (3) Carruth was not entitled to absolute prosecutorial immunity because the complaint alleged that he was acting outside of the scope of his duties.

## I. Sovereign Immunity

On appeal, Newton and Carruth make the same immunity points argued before the trial court. We first consider the question, however, of whether this is an appealable order and answer in the affirmative.

■ ■ This court has held that an appeal may be taken from an order denying a motion to dismiss under Ark. R. App. P.—Civ. 2(a)(2) based on the movant's assertion that he is immune from suit. *See Virden v. Roper*, 302 Ark. 125, 788 S.W.2d 470 (1990); *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). The rationale justifying an interlocutory appeal is that the right to immunity from suit is effectively lost if the case is permitted to go to trial. *Robinson v. Beaumont, supra*. Because Newton and Carruth contend that they are immune from suit, as opposed to being immune solely from liability, the denial of the motion to dismiss on immunity grounds is an appealable order. *Cf. Jaggers v. Zolliecoffer*, 290 Ark. 250, 718 S.W.2d 441 (1986) (involving the denial of summary judgment motions premised on statutory immunity from liability).

■ When a party appeals an adverse ruling on a motion brought under Ark. R. Civ. P. 12, this court treats the facts alleged in the complaint as true and views them in the light most favorable to the party who filed the complaint. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996); *Cross v. Coffman*, 304 Ark. 666, 805 S.W.2d 44 (1991). Newton and Carruth contend that, even under this standard of review, they are entitled to immunity.

■ We turn then to the issue of sovereign immunity. Sovereign immunity is jurisdictional immunity from suit, although we have not couched the immunity in terms of subject-matter jurisdiction. *See Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). One reason for this distinction is that sovereign immunity may be waived by the State, where subject-matter jurisdiction can never be waived. *See, e.g., State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996).

■ Article 5, Section 20, of the Arkansas Constitution reads: "The State of Arkansas shall never be made a defendant in any of her courts." The first question presented, then, is whether the State of Arkansas is the defendant in the instant case. Clearly, the State has not been named as a party, but our inquiry does not stop there.

■ ■ We established the test for whether a suit is one brought against the State in *Page v. McKinley*, 196 Ark. 331, 336-37, 118 S.W.2d 235, 238 (1938):

> While a suit against state officials or agencies is not necessarily a suit against the state, the general rule that a state cannot be sued without its consent cannot be evaded by making an action nominally one against the servants or agents of a state when the real claim is against the state itself, and it is the party vitally interested. Accordingly, it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent[.]

*Id. See also Cross v. Arkansas Livestock & Poultry Comm'n, supra; Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990), *cert. denied*, 498 U.S. 824 (1990); *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). We have further held that the end result of tapping the State's treasury for payment of damages will render the State a defendant. *State of Arkansas Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997).

■ Tapping the State's treasury may well be the end result when only employees and officers of the State are parties. This is so because the General Assembly has mandated the State to pay actual damages based on judgments obtained against its officers and employees, so long as the action by the officer or employee was "without malice and in good faith within the course and

scope of his employment and in the performance of his official duties." Ark. Code Ann. § 21-9-203(a) (Repl. 1996). Thus, to the extent the State will be obligated to pay damages under this provision, it is the real party in interest, and sovereign immunity comes into play. *See Beaulieu v. Gray, supra. See, e.g., Assaad-Faltas v. Univ. of Ark. for Medical Sciences,* 708 F. Supp. 1026 (E.D. Ark. 1989).

■ Our law is clear that in order for Etoch to counter an assertion of sovereign immunity, he must allege sufficient facts in his complaint to support the claim of malicious conduct by Newton and Carruth. In 1981, the General Assembly enacted law which provides that an officer or employee of the State is immune from an award of damages if that officer or employee acted without malice and within the scope of his employment. Ark. Code Ann. § 19-10-305(a) (Repl. 1994). *See also Cross v. Arkansas Livestock & Poultry Comm'n, supra; Smith v. Denton,* 320 Ark. 253, 895 S.W.2d 550 (1995); *Beaulieu v. Gray, supra.* Conversely, an officer or employee who acts maliciously or outside the scope of his employment is not protected by § 19-10-305(a). *See Bland v. Verser,* 299 Ark. 490, 774 S.W.2d 124 (1989); *Beaulieu v. Gray, supra.* By its enactment the General Assembly has clearly waived the State's sovereign immunity for certain actions taken by its officers and employees.

Construing the complaint liberally in favor of Etoch, as this court must do, *see Brown v. Tucker, supra,* Etoch has alleged a conspiracy between Newton and Carruth to have him arrested for the malicious purpose of embarrassing him and damaging his professional reputation and with knowledge that (1) no probable cause existed; (2) the allegations contained in the affidavit for arrest were false; and (3) no prosecution would ensue. We are convinced that Etoch's complaint contains sufficient allegations of malicious conduct to take the conduct outside the protection of § 19-10-305(a) and, accordingly, outside of the bounds of the Arkansas Constitution because the coffers of the State are not at risk for malicious conduct.

■ There is also the point that Etoch has sued Newton and Carruth both individually and in their official capacities,

which is relevant for purposes of his § 1983 claim. The United States Supreme Court has held that states are not "persons," which is the status required for § 1983 lawsuits, and also that a suit against a state official in his or her official capacity is not a suit against that person but, rather, is a suit against that official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Thus, suits against persons in their official capacities do not qualify as suits against persons for § 1983 purposes. Counsel for Etoch acknowledged at oral argument that it was error to sue Newton and Carruth in their official capacities for a § 1983 violation. For purposes of this opinion we will treat the two state officers as if they were sued only as individuals.

■ This leaves the § 1983 count pending against Newton and Carruth as individuals. Newton and Carruth contend they are immune as individuals because they were acting within the scope of their duties as state officers. A § 1983 suit is one brought pursuant to an act of Congress for a deprivation of civil rights against persons operating under color of state law. It establishes a federal cause of action to be enforced in either federal or state courts. *See Arkansas Writers' Project, Inc. v. Ragland*, 293 Ark. 395, 738 S.W.2d 402 (1987); *Robinson v. Beaumont, supra; Jaggers v. Zolliecoffer, supra*. As such, it is the supreme law of the land, and any state claim of immunity must yield to it. U.S. Const. art. 6, § 2; *Howlett v. Rose*, 496 U.S. 382 (1990). Sovereign immunity, accordingly, is not dispositive of the § 1983 claim for this additional reason. Hence, the trial court reached the right conclusion.

■ We hold that Newton and Carruth are not immune under the doctrine of sovereign immunity from the § 1983 cause of action or from the state-law tort claims.

## II. Prosecutorial Immunity

■ Carruth also contends that he is entitled to absolute immunity as opposed to qualified immunity under our decision of *Culpepper v. Smith*, 302 Ark. 558, 572, 792 S.W.2d 293 (1990). The U.S. Supreme Court has distinguished qualified immunity and absolute immunity by stating that qualified immunity depends on the circumstances and the prosecutor's motives, as established

by the evidence. *Imbler v. Pachtman*, 424 U.S. 409 (1976). Absolute immunity, on the other hand, defeats a suit at the outset so long as the official's actions were within the scope of his or her duties. *Id.* Malicious conduct will still be protected by absolute immunity. *See Imbler*, 424 U.S. at 427. Malice, however, can defeat a claim of qualified immunity.

 In *Culpepper v. Smith, supra*, we relied on *Imbler v. Pachtman, supra*, and stated:

> The decision of a prosecutor to file criminal charges is within the set of *core functions* which are protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, vindictively, without adequate investigation, or in excess of his jurisdiction.

*Culpepper*, 302 Ark. at 572, 792 S.W.2d at 300 (citations omitted) (emphasis added). This court noted, however, that the relevant question was whether the wrong complained of was committed by the prosecutor within the scope of his official duties. *Id.* In the current litigation, Etoch contends that *Culpepper* is not controlling because he has alleged that Carruth took actions outside the scope of his authority under law. Specifically, Etoch alleges that Carruth was outside of his judicial district as a prosecutor when he obtained an arrest warrant against Etoch in Hazen.

The U.S. Supreme Court has spoken on this issue in a line of cases involving § 1983 actions. The State does not discuss these cases, some of which were cited by Etoch, or attempt to distinguish them. In *Imbler v. Pachtman, supra*, the prosecutor was sued in a civil suit under § 1983 for allegedly using perjured testimony at the plaintiff's criminal trial and for suppressing material exculpatory evidence. The Court held that a prosecutor is immune from a § 1983 suit for damages for activities within the scope of the prosecutor's duties in "initiating a prosecution and in presenting the State's case." *Imbler*, 424 U.S. at 431. The Court acknowledged that, at common law, courts were virtually unanimous in holding that prosecutors had "absolute immunity" for actions undertaken within the scope of their prosecutorial duties. *Id.* at 420. The Court continued by discussing immunity from § 1983 actions in conjunction with common law tort immunities

and determined that awarding only qualified immunity in conjunction with the prosecution of a case would undermine the performance of prosecutorial duties and subject prosecutors to the "constant dread of retaliation." *Id.* at 428, *quoting Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949 (1950). The Court then cautioned:

> It remains to delineate the boundaries of our holding . . . . We agree with the Court of Appeals that [the prosecutor's] activities were intimately associated with the judicial phase of the criminal process, and thus were *functions* to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate.

*Id.* at 430–31 (citations omitted) (emphasis added). Thus, the Court in *Imbler* focused on what function the prosecutor was engaged in at the time of the alleged wrong, and it drew a distinction between the prosecutor's role as advocate and the role of an administrator or investigator.

In a subsequent decision, the Court adhered to this "functional approach," and held that a prosecutor was absolutely immune against liability for participating in a probable-cause hearing and eliciting false testimony from witnesses during that hearing. *See Burns v. Reed*, 500 U.S. 478 (1991). The Court observed that this activity by the prosecutor was "intimately associated with the judicial phase of the criminal process." *Burns*, 500 U.S. at 492, *quoting Imbler v. Pachtman*, 424 U.S. at 430. Following the *Imbler* functional approach, the Court concluded that the prosecutor's appearance clearly involved his role as the advocate for the state rather than a role as administrator or investigator. The Court went on, however, and held that the prosecutor only had qualified immunity pertaining to the legal advice he gave to police officers about putting a criminal suspect under hypnosis because giving advice to investigative officers was not intimately connected with the judicial phase of the criminal process.

Next, in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Court granted only qualified immunity to prosecutors in the face

of allegations that they had fabricated evidence during the preliminary investigation of a crime for the purpose of obtaining an indictment. The Court held that this conduct by the prosecutor was not undertaken in a judicial role: "Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate *before he has probable cause to have anyone arrested.*" *Buckley*, 509 U.S. at 274 (citation omitted) (emphasis added). The Court emphasized that when a prosecutor performs investigative functions normally performed by a police officer, it is neither appropriate nor justifiable that for the same act immunity should absolutely protect the prosecutor but not the police officer. The Court in *Buckley* also granted only qualified immunity for statements made by one of the prosecutors to the press. The Court reasoned that not only was there no common law immunity for this conduct, but it was also clear under *Imbler*'s functional approach that these statements were not intimately tied to the judicial phase of the criminal process.

Most recently, the Court, in *Kalina v. Fletcher*, 118 S.Ct. 502 (1997), held that a prosecutor was not entitled to absolute immunity when she vouched under penalty of perjury for the truth of matters contained in a "Certification for Determination of Probable Cause," in connection with the issuance of an arrest warrant. The Court did, however, afford her absolute immunity for certain functions undertaken in connection with preparing and filing the information and the motion for the arrest warrant. The Court explained:

> [P]etitioner argues that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution. That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment; indeed, even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate. But that judgment could not affect the truth or falsity of the factual statements themselves.

> Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath of affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

*Kalina,* slip op. at 11-12. Thus, the Court made a clear distinction between a prosecutor's preparing a probable-cause affidavit for a complaining witness to sign in connection with an arrest warrant and criminal information, which is more the role of the prosecutor as lawyer, and the actual swearing to the truthfulness of that same affidavit as complaining witness. The latter role is more properly that of an investigator or victim.

To summarize, this line of Supreme Court cases appears to foreclose absolute immunity for Carruth for Etoch's allegations relating to (1) his knowing direction and supervision of Newton in drafting a materially false affidavit and his conspiracy with Newton to accomplish that end outside of his jurisdiction as a prosecutor, and (2) his slanderous statements made to the press and others concerning the arrest. *See Kalina v. Fletcher, supra; Buckley v. Fitzsimmons, supra.* Whether the latter conduct is entitled to absolute immunity was expressly decided against Carruth's position by the Supreme Court in *Buckley v. Fitzsimmons, supra.* As to the former, knowingly directing and supervising false testimony for an arrest-warrant affidavit appears to be closely akin to allegations that a prosecutor fabricated evidence during the preliminary investigation of a crime, which was the issue in the *Buckley* case. The Court held in *Buckley* that this activity fell under the investigative, as opposed to the judicial or advocate, function. Also, the Court recently held that a prosecutor does not receive absolute immunity for swearing to false information in an affidavit for an arrest warrant in *Kalina v. Fletcher, supra.* It logically follows that knowingly directing the preparation of a materially false affidavit would not pass muster.

There is one additional point which we emphasize. The Supreme Court uses a presumption that qualified immunity initially applies to the conduct of a prosecutor with the burden

placed on that prosecutor seeking absolute immunity to establish that it is justified for the particular function in question. *See Burns v. Reed,* 500 U.S. at 486–87. Carruth in his brief and in oral argument provided us with no rationale for why absolute immunity should apply to Etoch's allegations, and, thus, he failed to meet his burden on all causes of action. This is so even while there are myriad cases on this subject. *See generally* Annotation, *When is Prosecutor Entitled to Absolute Immunity from Civil Suit for Damages under 42 USCS § 1983: Post-Imbler Cases,* 67 A.L.R.Fed. 640 (1984 & Supp. 1997). Carruth directs our attention only to *Culpepper v. Smith, supra,* in support of his contention of absolute immunity. That case, though, was decided before the *Burns, Buckley,* and *Kalina* decisions by the Court and is not controlling on its face.

Ordinarily, we would deem a prosecutor to be immune absolutely from claims of malicious prosecution or abuse of process. Here, though, the conduct alleged against Carruth falls outside of traditional prosecutorial functions and, indeed, in part outside of Carruth's jurisdiction as a prosecutor. Should it subsequently develop that Carruth was engaged in conduct intimately connected to his role as prosecutor in the judicial process, absolute immunity would attach. We conclude that Carruth does not have absolute immunity for the conduct alleged in Etoch's complaint.

We emphasize what is before this court today. The sole issue is one of prosecutorial immunity raised by Carruth as a jurisdictional matter under Ark. R. Civ. P. 12(b)(1) and 12(b)(2). No issue has been raised at this juncture under Ark. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. And no discovery has occurred which might give rise to future motions based on the discovered facts.

Affirmed.