# OZARKS UNLIMITED RESOURCES COOPERATIVE, INC. *v.* Edward C. DANIELS, Jr., and Edward C. Daniels, III

97-924                                                                969 S.W.2d 169

Supreme Court of Arkansas
Opinion delivered May 14, 1998

*Laser, Wilson, Bufford & Watts, P.A.,* by: *Dan F. Bufford* and *Brian A. Brown,* for appellant/cross-appellee.

*Vowell & Atchley,* by: *Russell C. Atchley, P.A.,* for appellees/ cross-appellants.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Ozarks Unlimited Resources ("O.U.R."), brings this appeal challenging the Boone County Circuit Court's findings that (1) O.U.R. was not immune from suit pursuant to Article 5, Section 20, of the Arkansas Constitution, and (2) that a lease entered into by O.U.R. was not violative of Ark. Code Ann. § 6-20-402 (Repl. 1993 & Supp. 1997). Additionally, O.U.R. appeals the circuit court's judgment awarding the appellees, Edward C. Daniels, Jr., and Edward C. Daniels, III (collectively "Daniels"), prejudgment

interest. Via a cross-appeal, Daniels contests the circuit court's judgment setting aside a portion of a jury verdict awarding Daniels $25,000 for damages sustained after July 26, 1993. Our jurisdiction is invoked pursuant to Ark. Sup. Ct. Rules 1-2(a)(1), (a)(17)(i), (a)(17)(vi) (1997) because the issues involve the interpretation of the Arkansas Constitution and Ark. Code Ann. § 6-20-402. Finding no error in the points raised on direct appeal or cross-appeal, we affirm.

O.U.R. is an education service cooperative, providing educational services to twenty-one school districts in a multi-county region of northwestern Arkansas, that was created pursuant to Ark. Code Ann. § 6-13-1000 to -1025 (Repl. 1993 & Supp. 1997). Since the late 1980's O.U.R. has leased a building from Daniels. The initial leases provided for one-year lease terms. However, in November of 1990 O.U.R. and Daniels executed an "Agreement to Enter into a Lease" that contemplated a new lease, conditioned upon Daniels completing specified improvements to the premises, with a five-year term at a higher monthly rental rate than the prior leases. In May of 1991, the parties executed a new lease with the five-year lease term.

Subsequently, in January 1992, O.U.R. informed Daniels that it was exploring other housing alternatives, because of a projected decrease in funding and an inability to make the additional space functional, and that it was terminating the lease effective June 30, 1992. Although Daniels sold the property to another party on July 26, 1993, they filed a complaint in the Boone County Circuit Court against O.U.R. for breach of the lease agreement. Daniels's complaint sought recovery of the unpaid monthly rental payments due from July 1992 through July 26, 1993, and $25,000 for diminution in property value.

O.U.R. asserted two legal defenses: (1) that the action was barred by Article 5, Section 20, of the Arkansas Constitution because it was, in effect, a suit against the State, and (2) that the five-year lease agreement was void because it violated the limitation on a school district's current indebtedness mandated by Ark. Code Ann. § 6-20-402. Additionally, O.U.R. claimed two factual defenses: (1) that the lease agreement permitted termination if

O.U.R.'s funding was not sufficiently available and, in fact, funding was not available, and (2) that Daniels breached the lease.

O.U.R. moved for summary judgment based on the two legal defenses and, after hearing oral arguments on March 10, 1995, the trial court denied the motion. On December 2, 1996, the parties tried the case before a jury. O.U.R. renewed the legal defenses raised in its summary-judgment motion at the close of Daniels' case and at the close of all evidence. However, the trial court overruled these motions and permitted the jury to consider whether O.U.R. was justified in terminating the lease because of a funding loss and whether O.U.R. breached the lease. Ultimately, the jury returned a verdict in favor of Daniels, awarding them $13,575.60 for lost rental payments from July 1, 1992 through July 26, 1993, and $25,000 for damages sustained after July 26, 1993. The trial judge set aside the post-July 26, 1993 damages and entered a judgment for Daniels in the amount of $13,575.60, plus prejudgment interest, attorney's fees, and costs.

## I.    Appeal from Denial of Motion for Summary Judgment

■ ■    The appellant's first point on appeal contests the trial court's finding that O.U.R. was not entitled to sovereign immunity pursuant to Article 5, Section 20, of the Arkansas Constitution. O.U.R. first raised the immunity defense via a motion for summary judgment, which the trial court denied. As a general rule, the denial of a motion for summary judgment is neither reviewable nor appealable. *Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 427 (1996). Accordingly, we first consider whether this point reaches us through an appealable order. *See Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). When the parties fail to address the issue of an order's appealability we, nevertheless, must determine whether we have jurisdiction. *See Associates Fin. Servs. Co. v. Crawford County Mem. Hosp.*, 297 Ark. 14, 759 S.W.2d 210 (1988).

O.U.R.'s brief on appeal suggests that it renewed the immunity defense via motions for directed verdict at the close of Daniels's case and at the close of all evidence. Such a motion, if made, would be properly appealable. However, the record indicates that

O.U.R. merely renewed the arguments advanced in its summary-judgment motion. Specifically, O.U.R. made the following motion at the conclusion of Daniels's case:

> The Court will recall that I had a motion for summary judgment pending which the Court denied about a year ago, but I just want at this point to renew for the record that we contend that this lease is unenforceable and illegal under the state law and the Arkansas constitution, and, in fact, make the same motion I did at summary judgment and have the Court note the denial of that for the record.

The trial court noted and overruled the motion. Likewise, the trial court noted and overruled the motion when made at the close of all evidence.

Although denials of summary-judgment motions generally are nonappealable, the general rule does not apply where the refusal to grant a summary-judgment motion has the effect of determining that the appellants are not entitled to immunity from suit, as the right of immunity from suit is effectively lost if a case is permitted to go to trial. *See Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987); *see also* Ark. R. App. P.—Civil 2(a)(2) (providing that an appeal may be taken from an order that in effect determines the action and prevents a judgment from which an appeal might be taken). In *Robinson*, this court held that the refusal to grant the motion for summary judgment amounted to "a denial of appellants' claimed defense which would have, if allowed, discontinued the action. The qualified immunity claim is a claim of right which is separable from, and collateral to, rights asserted in the complaint. . . ." *Robinson*, 291 Ark. at 482-83.

Moreover, in *Virden v. Roper*, 302 Ark. 125, 128, 788 S.W.2d 470 (1990), we noted that: "The appealability of a denial of summary judgment based on qualified immunity from suit is clearly established." *Id.* (citing *Robinson*, 291 Ark. 477); *compare Nucor Holding Corp.*, 326 Ark. 217 (dismissing appeal from denial of summary-judgment motion for lack of finality when issue raised was exclusivity of remedy under the Workers' Compensation Act)). Although we voiced our strenuous objections in *Nucor* against accepting appeals from denials of motions for sum-

mary judgment, the facts of the instant case are distinguishable from *Nucor*, which implicated the Workers' Compensation Act. Here, appellants claim the defense of sovereign immunity, which is, simply, jurisdictional immunity from suit. *See Newton*, 332 Ark. 325. Accordingly, the instant case falls within the well-settled line of cases permitting review of summary-judgment denials based on qualified immunity, and warrants our review. The standard of review when an order denying a motion for summary judgment is appealed is whether the trial court abused its discretion in denying the motion. *Karnes v. Trumbo*, 28 Ark. App. 34, 770 S.W.2d 199 (1989).

## II.    Sovereign Immunity

Article 5, Section 20, of the Arkansas Constitution provides that, "[t]he State of Arkansas shall never be made defendant in any of her courts." Article 5, Section 20, grants sovereign immunity and a general prohibition against awards of money damages in lawsuits against the State of Arkansas and its institutions. *Cross*, 328 Ark. at 258 (citing *Smith v. Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771, *cert. denied*, 498 U.S. 824 (1990). The doctrine of sovereign immunity is rigid and, as such, the immunity may be waived only in limited circumstances. *Id.* at 258-59 (citing *State v. Staton*, 325 Ark. 341, 934 S.W.2d 478 (1996). Where the suit is one against the State and there has been no waiver of immunity, the trial court acquires no jurisdiction. *Id.* (citing *Staton*, 325 Ark. 341). Therefore, sovereign immunity fully protects the State absent a waiver or consent by the State to be sued. *Jacoby v. Arkansas Dept. of Educ.*, 331 Ark. 508, 962 S.W.2d 773 (1998); *see also Cross*, 328 Ark. 255; *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996); *Fireman's Ins. Co.*, 301 Ark. 451; *Parker v. Moore*, 222 Ark. 811, 262 S.W.2d 891 (1953). There is no issue of waiver or consent by the appellant in the case before us. O.U.R. relies, rather, on a claim of immunity granted under the State Constitution.

Here, O.U.R. notes that it is a "public agency" overseen by the Arkansas Department of Education pursuant to Ark. Code Ann. §§ 6-13-1001 to -1025, the Education Service Cooperative

Act of 1985, and that this "agency" designation makes it akin to the State Department of Education. Moreover, O.U.R. acknowledges that it receives funding from the State, which would be jeopardized by any judgment against O.U.R. . Daniels argues, on the other hand, that the funding issue is irrelevant, that the mere appellation "public agency" is not determinative of whether O.U.R. has the capacity to sue and be sued, and that the answer to that question lies in the enabling legislation creating education service cooperatives. We agree.

A review of the enabling legislation reveals that the co-op entities are more closely analogous to school districts than, as the appellant suggests, to the State Department of Education. Significantly, the legislation governing co-ops is nested within the legislation governing school districts and not within the statutes governing the State Department of Education. Described in section 6-13-1002 as "intermediate service units," the co-op entity is comprised of school districts and, like school districts, co-ops must report to the Department of Education. The growth of a co-op begins at a grassroots level. Although the tentative geographic boundaries of co-ops are established by the Department of Education, 75% of the school districts in a proposed co-op must request formation of the co-op by formal resolutions. The decisions to initiate, activate, or participate in a co-op are made by school districts. Further, co-op personnel are employed and terminated using the same procedures applicable to school districts and, only when the co-op's governing body approves, will the Department of Education assign state personnel to the co-op. Clearly, the growth, utilization, and maintenance of the co-op stems from the participating school districts and, as an entity, the co-op is comparable to a school district.

The importance of the co-op's characterization as one type of entity or another cannot be overemphasized because, unlike school districts, the State Department of Education enjoys sovereign immunity. School districts are considered creatures of the state who may not avail themselves of all constitutional safeguards. See Delta Special Sch. Dist. No. 5 v. State Bd. of Educ., 754 F.2d 532 (8th Cir. 1984). As creatures of statute, school districts may only act through a board of directors, and are bound by all

lawful contracts into which they may enter. *F.E. Compton & Co. v. Greenwood Sch. Distr. No. 25*, 203 Ark. 935, 159 S.W.2d 721 (1942). A school district is a corporate body with the power to sue and be sued. *Clarke v. School Distr. No. 16*, 84 Ark. 516, 106 S.W. 677 (1907) (decision under prior law). Consistent with the legislation creating co-ops and the practical manner in which they function, we conclude that the trial court's determination that O.U.R. was not entitled to sovereign immunity was not erroneous.

### III.  Ark. Code Ann. § 6-20-402

O.U.R.'s second point on appeal, also raised in its summary-judgment motion, is that the trial court erred in finding that the five-year lease term was not violative of section 6-20-402. We note that this point is not properly before us on appeal through a denial of a summary-judgment motion; however, we will address it in the interest of judicial economy. Paradoxically, O.U.R. urges us to find that it is analogous to the State Department of Education for purposes of analyzing its immunity argument but compels us to define it as a school district for purposes of applying section 6-20-402, a statute found in a subchapter entitled "District Finances." Section 6-20-402 (Repl 1993 & Supp. 1997) provides:

> The amount of obligations incurred by a school district for any school fiscal year shall not be in excess of the revenue receipts of the district for that year except as provided herein and in §§ 6-20-801 et seq. [Revolving Loan Program] and 6-20-1201 et seq. [District Bonds].

Although the co-op entity is more similar to a school district than the State Department of Education for purposes of determining immunity, the co-op's formation and operation are independently governed by the Education Service Cooperative Act. For example, the Act authorizes a co-op's board of directors to employ a director, establish policies and procedures for operation and management, prepare an annual budget, and receive and expend funds and employ necessary personnel to provide programs and services. Ark. Code Ann. § 6-13-1006(d). Notably, the Act also empowers co-ops to rent or lease facilities and buildings to provide programs and services. *Id.*

■ Arguably, section 6-20-402 is wholly inapplicable to a co-op because it is a part of school district finance statutes. However, even an inspection of the statutes that govern co-ops indicates the legislature's determination that co-ops may enter into contracts that will commit their funds, and extend their indebtedness, beyond one fiscal year. Most compelling, the Act authorizes a co-op to enter into a three-year employment contract with a director. Ark. Code Ann. § 6-13-1012(c). Assuming, *arguendo*, that section 6-20-402 were applied to a co-op, it would be perplexing to reconcile that debt limitation with the authority expressly granted to a co-op in section 6-13-1012. We agree with the appellees that the legislature could have imposed similar debt restrictions within the Education Service Cooperative Act. In fact, the only limitation placed on a co-op's board of directors is that the board's agreements must be "consistent with funds available." Ark. Code Ann. § 6-13-1006(d). In light of the foregoing, we conclude that the trial court's finding that O.U.R.'s five-year lease was not in violation of section 6-20-402 was not erroneous.

## IV. Prejudgment Interest

■ In the interest of judicial economy, we will consider the appellant's third point on appeal contesting the trial court's awarding Daniels prejudgment interest. Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997). Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *TB of Blytheville v. Little Rock Sign & Emblem*, 328 Ark. 688, 946 S.W.2d 930 (1997) (citing *Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981)).

■ Here, the lease agreement detailed a specific sum to be paid as rent each month, specifically, $1,000.41 per month, due on the first of each month, adjusted annually each January to reflect changes in the consumer price index. This formula per-

mits the calculation, with reasonable certainty, of the overall amount due during the remaining term of the lease and yields a liquidated amount that is not subject to conjecture. The amount of damages was ascertainable by means of a defined formula from the date O.U.R. vacated the premises. Accordingly, we conclude that the trial court did not err in awarding Daniels prejudgment interest.

## V. Cross-Appeal

On its own motion, the trial court set aside the jury's verdict awarding Daniels $25,000 for damages sustained after July 26, 1993, the date the leased property was sold to another party. From that judgment, Daniels brings the instant cross-appeal. Before considering the final point on cross-appeal, we note that Daniels' complaint actually sought recovery for $25,000 for diminution in property value allegedly caused by O.U.R.'s lease termination and waste, which, Daniels argued, left the property vacant and reduced its marketability. Diminution in property value is a recoverable element of damages, *Walker v. Dibble*, 241 Ark. 692, 409 S.W.2d 333 (1966), but no such instruction was given to the jury. Rather, the jury received an instruction relating to lost profits under the lease, which are not recoverable damages. Daniels failed to object to the submitted instruction and its variance from his claimed damages, and arguments not presented to the trial court are not reviewable on appeal. *See Schueck v. Burris*, 330 Ark. 780, 787, 957 S.W.2d 702 (1997) (citing *Jamison v. Estate of Goodlett*, 56 Ark. App. 71, 938 S.W.2d 865 (1997)).

Turning now to the point that is before us, the first issue is whether the trial court erroneously instructed the jury that Daniels could receive an award for damages sustained after July 26, 1993. In *Weingarten/Arkansas, Inc. v. ABC Interstate Theatres, Inc.*, 306 Ark. 64, 811 S.W.2d 295 (1991), we recognized that when a landlord "reenters and resumes the use and enjoyment of the premises for his own account, he terminates the lease, as a matter of law, insofar as his right to recover subsequently accruing rent is concerned." *Weingarten*, 306 Ark. at 69 (citing 49 Am. Jur. 2d, *Landlord and Tenant* § 620, 592 (1970); *Hayes v. Goldman*, 71 Ark. 251, 72 S.W. 563 (1903)). O.U.R. asserts that Daniels

accepted the surrender of the leasehold and resumed their use and enjoyment of the property by selling it to another party. Daniels, in effect, terminated the lease and the accrual of damages under the lease for lost rent. The authority of *Weingarten* supports O.U.R.'s conclusion, and we agree that a jury instruction permitting an award for damages after the sale date was erroneous.

■ Second, we must determine whether the trial court erred by setting aside an erroneous jury instruction. Significantly, the jury's verdict was in the form of two interrogatories, the first relating to damages prior to the sale of the property on July 26, 1993, and the second related to damages sustained after the sale date. Notably, each interrogatory answered by the jury is a special verdict on that particular fact. *Carroll Boone Water District v. M. & P. Equipment Co.*, 280 Ark. 560, 661 S.W.2d 345 (1983). According to the Reporter's Notes to Ark. R. Civ. P. 49, the court "has the power and authority to rectify inconsistent answers, particularly where the inconsistency is due in part to incorrect instructions to the jury." Given that the incorrect instruction was a special verdict on a particular fact, we conclude that the trial court did not err in setting aside that portion of the award representing damages sustained after July 26, 1993.

In conclusion, we affirm the trial court's findings that the appellant was not entitled to sovereign immunity and that the five-year lease was not violative of Ark. Code Ann. § 6-20-402. We also affirm the trial court's judgment awarding Daniels prejudgment interest and setting aside a $25,000 award for damages sustained after July 26, 1993.

CORBIN, BROWN, and IMBER, JJ., concur.

GLAZE, J. not participating.

ROBERT L. BROWN, Justice, concurring. My only disagreement with the majority opinion is its unrealistic assumption that O.U.R. made a *motion for summary judgment* at the close of the Daniels's case, and at the close of its own case, and at the close of all of the evidence following rebuttal. It is clear to me and, no doubt, was equally clear to the attorneys at trial and to the trial court that defense counsel was making a motion for directed verdict but was making the same argument he made in his pretrial motion for summary judgment. Indeed, counsel said as much:

The Court will recall that I had a motion for summary judgment pending which the Court denied about a year ago, but I just want at this point to renew for the record that we contend that this lease is unenforceable and illegal under the state law and the Arkansas constitution, and, in fact, make the same motion I did at summary judgment and have the Court note the denial of that for the record.

The trial court overruled defense counsel's motion three times at trial, which, again, supports the conclusion that the trial court, without question, viewed these motions as motions for a directed verdict.

I would accept the reality of what occurred at trial and recognize that the trial court overruled O.U.R.'s directed-verdict motions. This conclusion would avoid the contorted reasoning of the majority opinion that what transpired at trial fell under the qualified-immunity exception to our general rule regarding denials of summary-judgment motions.

CORBIN and IMBER, JJ., join.